**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF VIRGINIA**
**(Alexandria Division)**

| | |
|---|---|
| **In re.:** | **Case No.: 24-12069-KHK** |
| **AMERINVEST, LLC** | **Chapter 11** |
| **Debtor.** | |

**MOTION TO DISMISS**

APSEC Resolution, LLC ("APSEC"), by and through its undersigned counsel, hereby moves this Court to dismiss this case on the grounds that it is a clear two-party dispute and an abuse of the bankruptcy system. In support of its Motion, APSEC states as follows:

**I.    INTRODUCTION.**

The Debtor's bankruptcy case is a clear abuse of the bankruptcy process. This is a straightforward two-party dispute between the Debtor and APSEC and the dispute does not belong in bankruptcy.

The Debtor's only asset is real property that it leases to third parties. The Debtor's only creditor is APSEC. At the time of filing the bankruptcy case, the Debtor was not in financial distress and was is paying all of its obligations as they came due other than a matured promissory note with APSEC. Despite having ample time to address the matured note, this case was filed on the eve of APSEC's foreclosure sale for the sole purpose of stopping the sale of the Property. There are no other creditors whose interests would be protected by continuing this case. The Debtor's chapter 11 plan underscores these concerns as it filed in bad faith, fails to treat APSEC

---

MILES & STOCKBRIDGE P.C.
John T. Farnum (VSB No. 74075)
1201 Pennsylvania Ave., Suite 900
Washington, DC 20002
T/F: 202.465.8385
jfarnum@milesstockbridge.com

*Counsel for APSEC Resolution, LLC*

fairly and equitably and cannot satisfy the best interests of creditors test. As such, the case should be dismissed to allow APSEC to proceed with its state court remedies.

## II. JURISDICTION AND VENUE.

This Court has jurisdiction over this matter under 28 U.S.C. §§ 157 and 1334. Venue is proper under 28 U.S.C. §§ 1408 and 1409. This Motion is filed under sections 105(a) and 1112(b) of the Bankruptcy Code.

## III. BACKGROUND.

### a. The Debtor.

The Debtor is a Virginia limited liability company. Daria Karimian formed the Debtor in 1999. Mr. Karimian is the sole and managing member of the Debtor.

The Debtor owns three parcels of commercial real property commonly known as 406 E. Glebe Road, 408 E. Glebe Road and 3006 Richmond Highway, Alexandria VA 22305 ("Real Property"). Aside from the Real Property, rents are the only assets of the Debtor.

The Debtor purchased the entirety of the Real Property in one transaction in 1999 for $650,000 from Frank and Althea Pollard (the "Pollards"). The Debtor used seller take-back financing to finance the purchase.

### b. The Debtor's Operations.

Since its formation in 1999, the singular business of the Debtor has been as the landlord of the Real Property. The Debtor has no other business and has no employees. According to the Debtor's Schedules of Assets and Liabilities and Statement of Financial Affairs (as may have been amended, the "Schedules"), the Debtor deposited its rents into accounts that include commingled personal funds.

The Debtor has not undertaken any development or construction since acquiring the Real

2

Property in 1999; only a single commercial building has ever been located on the Real Property. The remainder of Real Property consists of empty lots that provide parking and access from Glebe Road and Richmond Highway in Alexandria, Virginia.

According to the Debtor's Schedules, Monthly Operating Reports and the testimony of Mr. Karimian, the Debtor currently collects rent from three tenants – Battery Life, LLC (408 E Glebe), Old Town Vape & Tobacco LLC (408 E Glebe) and Cardeal, LLC (406 E Glebe).

Aside from current tenants, at least three other tenants have leased from the Debtor –

- *Edo Noe Baten Perez* – Mr. Perez operated a food truck that leased a parking space on either 408 E. Glebe or 3006 Richmond Hwy. Alexandria, VA 22305. And, although the term of the lease with Perez extends through 2033, Mr. Perez walked away from the lease and is no longer paying rent.

- *Los Tres Amigos Tex-Mex & Italian Cuisine, LLC* – Los Tres Amigos operated a restaurant out of 408 E Glebe and was subject to a pre-petition unlawful detainer suit.

- *Huascran, Inc.* – Huascran operated a restaurant out of 408 E Glebe, but abandoned the premises and sued the Debtor claiming the food truck operated by Mr. Perez competed and interfered with its business operations because the food being served was too similar to that of Huascran.

c.  **The Secured Loan.**

Although the Pollards initally provided seller-take back financing to the Debtor to assist with the purchase of the Real Property, the Pollards are no longer creditors of the Debtor and maintain no lien on the Real Property as evidenced by the Schedules and the Claims Register in the case.

The Debtor is indebted to APSEC by way of a loan ("Loan") reflected in certain written agreements, documents and instruments (collectively, the "Loan Documents") executed in connection with indebtedness originally owed to the Bank of Hope ("BOH"). The Loan Documents include, but are not limited to, a Business Loan Agreement in the original principal amount of $1,800,000 executed by the Debtor on December 31, 2018 ("Loan Agreement"), a

single Deed of Trust ("Deed of Trust") that grants a lien on the Real Property and its proceeds, a single Assignment of Rents ("AOR") that grants a lien on all rents, revenue and income from the Real Property, and a Promissory Note in the original principal amount of $1,800,000 executed by the Debtor on December 31, 2018 ("Note").

In June 2024, the Loan Documents were assigned to APSEC. The Debtor has acknowledged its obligations to, and the lien of, APSEC under the Loan Documents as part of cash collateral proceedings. *See* ECF 38 (Interim Cash Collateral Order). APSEC timely filed Proof of Claim 1-1 on January 13, 2025, in the pre-petition amount of $1,810,557.90. According to the Schedules, the alleged value of the Real Property is greater than the pre-petition debt of APSEC, as such interest and fees, including attorneys' fees and costs, have continued, and are continuing, to accrue.

Numerous defaults exist under the Loan Documents, including a 2023 maturity default. *See* ECF 27, 38; APSEC Proof of Claim 1-1). Prior to the Petition Date, the Note was also accelerated and a notice of foreclosure against the Property was sent to the Debtor on September 30, 2024, which notified the Debtor of a foreclosure sale scheduled for November 6, 2024. The Debtor filed its bankruptcy petition to avoid foreclosure and for no other purpose.

**d.     The Bankruptcy Case.**

On November 5, 2024, the Debtor filed its voluntary petition for relief under Chapter 11 (Subchapter V) of the Bankruptcy Code. On November 26, 2024, the Debtor filed its Schedules. The Schedules identified only four (4) creditors – APSEC (secured), City of Alexandria (priority unsecured), Beiramee Law Group, P.C. (nonpriority unsecured and disputed) and Huascran, Inc. (nonpriority unsecured and disputed).

APSEC is the only creditor, listed in the Schedules or otherwise, to timely file a proof of

4

claim. *See* Claims Register. The prepetition taxes owed to the City of Alexandria have been paid and the claims of Beiramee Law Group and Huascran were each listed as disputed. The proof of claim filing deadline was January 14, 2025. Huascran filed an untimely proof of claim in an amount matching the figure set forth in the Schedules on March 17, 2025. Because the claim was listed as disputed in the Schedules and the proof of claim is invalid, the Debtor has no obligation to pay Huascran. Therefore, APSEC is the only prepetition creditor of the Debtor.[1] Of course, this is no surprise. The Debtor is only the landlord for the Real Property, which has remained (mostly) unchanged since the Debtor purchased the Real Property.

On February 3, 2025, the Debtor filed its Plan. Pursuant to the Plan, the Debtor values the Property at $2,318,615 and the personal property at $291,659. The Debtor improperly seeks to modify APSEC's mortgage and delay payment of the prepetition arrearage owed to APSEC of $162,599.81 even though it has $245,343.55 in cash on hand. The Debtor's projected monthly rental income is $16,943, but its projected mortgage and plan payments to APSEC ($17,188.03) exceed this amount by $245.03—thus the Debtor's Plan shows the Debtor will be operating at a loss for the duration of the Plan. And, although the Plan includes a provision to pay unsecured creditors provision, the Plan does not provide for any payments to (Class 2) general unsecured creditors. This makes sense, after all, APSEC is a secured creditor, is the only creditor and its treatment under the Plan is not only impermissible (as detailed below and in a forthcoming Plan objection), but fully supports the basis for dismissal – this is a two-party dispute and constitutes an abuse of the bankruptcy process.

### IV.   RELIEF REQUESTED.

By this Motion, APSEC requests that the Court dismiss the Debtor's chapter 11

---

[1] The proof of claim filing deadline was January 14, 2025. Huascran filed an untimely proof of claim in an amount matching the figure set forth in the Schedules on March 17, 2025. Because the claim was listed as disputed in the Schedules and the proof of claim is invalid, the Debtor has no obligation to pay Huascran under any plan.

5

bankruptcy case pursuant to section 1112(b) of the Bankruptcy Code because it is a two-party dispute that does not require the intervention of this Court and constitutes an abuse of the bankruptcy process.

**V.     ARGUMENT.**

Pursuant to Section 1112(b)(1), the Court shall convert or dismiss a Chapter 11 case, whichever is in the best interests of creditors and the estate, for "cause."  Section 1112(b)(4) sets forth sixteen (16) non-exhaustive examples of "cause" for dismissal.  These enumerated examples are not exclusive.  The Court is free to find other cause for dismissal under equitable grounds. S*ee C-TC 9th Ave. P'ship v. Norton Co. (In re C-TC 9th Ave. P'ship)*, 113 F.3d 1304, 1311 (2d Cir. 1997) ("It is important to note that this list is illustrative, not exhaustive.").  The Court "has wide discretion to determine if cause exists and how to ultimately adjudicate the case." *In re 1031 Tax Grp., LLC*, 374 B.R. 78, 93 (Bankr. S.D.N.Y. 2007).

Section 1112(b) of the Bankruptcy Code permits dismissal of cases which abuse the bankruptcy process, including cases that are not filed in good faith. *LaSalle Bus. Credit Inc. v. Toth*, 269 B.R. 587, 589-90 (Bankr. W. D. Pa. 2001); *In re SGL Carbon Corp.*, 200 F. 3d 154, 162, n. 10 (3d Cir. 1999) (good faith is a prerequisite to filing for chapter 11 and the debtor bears the burden of proof once good faith has been questioned). Good faith involves the "debtor's honest intention in filing as well as the need and realistic ability to effectuate a reorganization." *Carolin Corp. v. Miller*, 886 F.2d 693, 700 (4th Cir. 1989).

Courts have routinely found two-party disputes between a debtor and another party to be an abuse of the Bankruptcy Code. "'[T]wo-party disputes . . . simply have no place in bankruptcy.' When a 'bankruptcy case is essentially a two-party civil lawsuit involving state law that was brought before a federal Bankruptcy Court, under the guise of being a reorganization,' it

6

is an abuse of the Bankruptcy Code." *Freidzon v. Gorman*, 2016 U.S. Dist. LEXIS 186462, at *7 (E.D. Va. July 29, 2016) (citations omitted); *see also In re Crown Fin. Ltd.*, 183 B.R. 719, 722-3 (Bankr. M.D.N.C. 1995) ("where a debtor's reorganization effort involves essentially a two-party dispute which can be resolved in state court, and the filing for relief under Chapter 11 is intended to frustrate or delay the legitimate efforts of creditors to enforce their rights against the debtor, dismissal for cause is warranted"); *In re Taipin*, 2013 Bankr. LEXIS 3047, at *5 (Bankr. D. Haw. July 30, 2013) ("[I]t is bad faith to file for bankruptcy when the dispute is between two parties."); *In re Harvey Probber, Inc.*, 44 B.R. 647, 650 (Bankr. D. Mass. 1984) ("[Chapter 11] clearly was not intended as an alternate forum for private disputes that only involved the disputants for which there was a well established albeit less expeditious forum"); *In re Stober*, 193 B.R. 5, 11 (Bankr. D. Ariz. 1996) ("[Two-party] disputes are best resolved in the state court process, not bankruptcy courts.").

Here, the Debtor's bankruptcy case is a clear abuse of the bankruptcy process. This is a straightforward two-party dispute between the Debtor and APSEC. The dispute does not belong in bankruptcy court. The Debtor's Schedules, Monthly Operating Reports, myriad pleadings filed by the Debtor and the Debtor-representative's testimony at the evidentiary hearing on APSEC's motion to designate the Debtor as a "single asset real estate" debtor demonstrate as much. The Debtor only has one creditor – ASPEC. The scheduled debt owed to the City of Alexandria was paid in the ordinary course of business and the scheduled debts of Beiramee and Huascran were listed as disputed and do not need to be paid because neither Beiramee and Huascran timely filed a proof of claim. At the time of filing the bankruptcy case, the Debtor was not in financial distress and was is paying all of its obligations as they came due other than the matured Note with APSEC. Despite having a year to address the *matured* Note, this case was filed on the eve

7

of APSEC's foreclosure sale for the sole purpose of stopping the sale of the Property. There are no other creditors whose interests would be protected by continuing this case.

The Debtor's chapter 11 plan underscores these issues.[2] For example, the Plan unambiguously fails the best interest of creditors test. According to the Debtor's own calculations, APSEC, a non-accepting/rejecting creditor, is set to receive less under the proposed Plan than if the Debtor's assets were liquidated under Chapter 7. Under the Plan, the Debtor proposes to pay APSEC: (1) the majority of its claim at an 8.5% interest rate, amortized over 30 years with a balloon payment due 42 months from the effective date of the Plan and (2) the prepetition arrearage of $162,599.81 in 36 monthly installments of $4,516.66. The Plan fails to demonstrate that the stream of payment that APSEC would receive under the Plan has a present value greater than the amount that APSEC could receive if the Debtor's assets were liquidated under Chapter 7. In fact, if the Debtor's assets were liquidated on the effective date, the Debtor's liquidation analysis provides that the total property value would be $2,610,274. Thus, according to the Debtor it could – but is not proposing to - pay APSEC in full on the entirety of its claim of $1,811,311.67 as of the effective date in a liquidation. Rather, under the treatment proposed in the Plan, the vast majority of APSEC's claim is amortize over 30 years with a speculative balloon payment at month 42 and the prepetition arrearage is paid over 36 months without interest or any other considerations for the risk of non-payment.[3]

The Plan is also neither fair nor equitable. Section 1129(b)(2)(A)(i)(II) makes clear that

---

[2] Contemporaneously with the filing of this Motion, APSEC – as the sole creditor – has voted to reject the Plan. And, should the case be designated a Single Asset Real Estate case, APSEC will vote against any plan, which would results in an unconfirmable plan.

[3] If there were unsecured creditors to pay, Plan would meet the best interest of creditors test as it relates to unsecured claims. The Plan proposes to pay allowed unsecured creditors – of which there are none- "in full from funds remaining after the payments in full of all priority tax claims, secured claims, and administrative expenses." Plan at Article 4. Yet, the Plan does not anticipate paying APSEC's secured claim until a non-guaranteed balloon payment might be paid at some point in the furture. Therefore, any unsecured creditors would not be paid for several years without interest or anything to account for a multi-year delay of payment.

8

in order for a plan to be considered fair and equitable the plan must provide for holders of secured claims to receive payments totaling "at least the allowed amount of such claim, of a value, as of the effective date of the plan, of at least the value of such holder's interest in the estate's interest in such property." 11 U.S.C. § 1129(b)(2)(A)(i)(II). The proposed Plan does not pay APSEC the present value of its claim. First, the 8.5% interest rate is significantly below the current contract rate of 10.35%, thus the Plan proposed to pay APSEC at a rate less that it is currently accruing interest while the Debtor remains in bankruptcy! Second, the 8.5% interest rate is below the *Till* rate and does not account for the Debtor's significant and material risk of default. As stated above, the Debtor has been operating at a negative cash flow during this bankruptcy case and such continued negative cash flow is projected throughout the Plan, as such the Plan is not feasible and raises significant risk of default. The only way the Debtor suggests that it can make the payments proposed under the Plan is to impermissibly hold APSEC's cash collateral at zero interest to supplement its shortfalls. Without even considering the Debtor's prepetition commingling of funds, this exposes APSEC to significant and unacceptable risk.

WHEREFORE, APSEC respectfully requests the entry of an order, substantially in the form attached hereto, dismissing the Debtor's chapter 11 bankruptcy case with prejudice such that the automatic stay will not apply to APSEC should the Debtor file another bankruptcy within 180 days of the entry of the order dismissing the case; and granting such other and further relief as the Court deems necessary and proper.

**\*Signature Page Immediately Follows\***

Dated:  April 14, 2025                    Respectfully submitted,

                                                      APSEC RESOLUTION, LLC

                                                      By Counsel

**MILES & STOCKBRIDGE P.C.**
1201 Pennsylvania Ave., Suite 900
Washington, DC 20002
T: 202.465.8385
F: 202.465.8385
jfarnum@milesstockbridge.com


By: */s/ John T. Farnum*
    John T. Farnum (VSB No. 74075)

## **CERTIFICATE OF SERVICE**

I hereby certify on the 14th day of April 2025, a true copy of the foregoing was served via the Court's ECF system on all parties set up to receive electronic notices in this case.

- **Kristen S. Eustis**   Kristen.S.Eustis@usdoj.gov, robert.w.ours@usdoj.gov
- **John Tucker Farnum**   jfarnum@milesstockbridge.com, jfarnumecfnotices@gmail.com;dbernard@milesstockbridge.com
- **David C. Jones**   davidcjonesjr@gmail.com, r42960@notify.bestcase.com
- **Stephen A. Metz**   smetz@offitkurman.com, MD71@ecfcbis.com
- **Office of the U.S. Trustee**   ustpregion04.ax.ecf@usdoj.gov

And via first-class mail to:

Bahiroo Karimian,
1652 La Salle Avenue,
McLean, VA 22102-2918

Amerinvest, LLC,
1602 Mary Ellen Ct.,
McLean, VA 22101-5023

United States Bankruptcy Court,
200 South Washington Street,
Alexandria, VA 22314-5405

Bradley T. Canter, Esq.,
2200 Research Blvd. #560,
Rockville, MD 20850-3289

City of Alexandria,
Finance Dept. Treasury Div.,
P.O. Box 323, Alexandria, VA 22313-0323

Edy Noe Baten Perez,
833 Bashford La #104,
Alexandria, VA 22314-1376

Maher Almadi,
9605 Dove Hollow Lane,
Glen Allen, VA 23060-3257

U.S. Securities and Exchange Commission,
Office of Reorganization,
950 East Paces Ferry Road, Suite 900,
Atlanta, GA 30326-1382
Gerard R. Vetter, Office of the U.S. Trustee - Region 4,
1725 Duke Street, Suite 650,
Alexandria, VA 22314-3489

Battery Life, LLC,
408 E. Glebe Road,
Alexandria, VA 22305-3021

Beiramee Law Group, P.C.,
7508 Wisconsin Avenue, 2nd Fl,
Bethesda, MD 20814-3561

Blue Ridge Trustees, LLC,
10412 Main Street #200,
Fairfax, VA 22030-3324

Cardeal, LLC,
6602 Quicksilver Ct,
Springfield, VA 22150-1944

Cohn Goldberg Deutsch LLC,
526 King Street #201,
Alexandria, VA 22314-3143

Huascran, Inc.,
5708 N. Kings Highway,
Alexandria, VA 22303-1411

Tobacco King Alexandria, Inc.,
408A E. Glebe Road,
Alexandria, VA 22305-3021

David C. Jones Jr.,
David C. Jones, Jr., P.C.,
10617 Jones Street, Ste 301-A,
Fairfax, VA 22030-7505
Stephen A. Metz,
Offit Kurman, P.A.,
7501 Wisconsin Ave, Suite 1000W,
Bethesda, MD 20814-6604

*/s/ John T. Farnum*
John T. Farnum