## UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### Alexandria Division

In re:

Amerinvest, LLC,                                      Case No. 24-12069-KHK
                                                      (Chapter 11)
     Debtor


### <u>MEMORANDUM OPINION AND ORDER</u>

The matter before the Court is (i) the Motion by APSEC Resolution, LLC to Designate Debtor as a Single Asset Real Estate Entity Pursuant to 11 U.S.C. § 101(57B) (Doc. No. 25) (the "SARE Motion") and the response thereto; and (ii) the U.S. Trustee's Objection to the Debtor's Designation as a Small Business Debtor under Sections 101(51D) and 1182(1) of the Bankruptcy Code (Doc. No. 54) and the responses thereto. The Court held a hearing on the SARE Motion on February 25, 2025, during which the Court took evidence and heard arguments of counsel. At the hearing, following the close of evidence, Debtor's counsel conceded that if the Court found that the Debtor was a single asset real estate entity that it could not proceed as a small business or subchapter V debtor. At the conclusion of the hearing, the Court directed the parties to submit additional briefing on the SARE Motion. For the reasons that follow, the Court will designate the Debtor as a single asset real estate debtor, and consequently, will revoke the subchapter V and small business debtor designations.

### Factual Background:

Amerinvest, LLC (the "Debtor") is a limited liability company formed in 1999 and organized under the laws of the Commonwealth of Virginia, with a principal place of business located at 1602 Mary Ellen Ct., McLean, Virginia. Docket ("Doc.") No. 1; Exhibit ("Exh.") 3.

The Debtor is managed by its owner and sole-member, Daria Karimian.  Hearing Transcript ("Hr. Tr.")  6:14-24.

Amerinvest owns three adjacent parcels of real estate in the City of Alexandria.  Parcel 1, located at 408 E. Glebe Rd., contains three rental spaces: 408A, 408B and 410 in one building. Doc. No. 35, pg. 1; Hr. Tr. 15:25-16:4.   According to the Debtor's manager, the unit labeled 410 does not actually exist as a distinct address.  It was assigned a separate number for the restaurant buildout but is physically located at 408.  Hr. Tr. 18:24-19:1. Parcel 2 is a fenced lot located at 406 E. Glebe Rd., and Parcel 3 is an unfenced lot located at 3006 Richmond Highway.  Parcels 1 and 3 are adjacent to one another, with no physical divider between them.  Hr. Tr. 18:1-5.

406 E. Glebe Rd. is rented to Cardeal, LLC.   408A is rented to Old Town Vape & Tobacco, LLC, and 408B is rented to Battery Life, LLC.   The 410 space is vacant but built out to accommodate a restaurant tenant and Amerinvest is actively searching for a new lessee for the space. Doc. No. 35, pg. 1.  One of the leases for 408 E. Glebe Rd. (Parcel 1) authorized use of parking spaces on the adjacent parcel at 3006 Richmond Highway (Parcel 3).  Exh. 12, pg. 10. Parking for the restaurant would also be on Parcel 3. Hr. Tr.17:9-18:1.

At the time of filing, the Debtor was leasing parking space to a food truck.  The lease agreement for the food truck business refers to one parking space within "the parking area of 408 E. Glebe Rd / 3006 Richmond Hwy. Alexandria, Virginia ('Property')" and the location of the space was to be determined by the landlord.  Exh. 12, pg. 1.  The Debtor's manager testified that the truck ended up using space on Parcel 3 at 3006 Richmond Highway.  Hr. Tr. 23:8-19.  After the bankruptcy was filed the food truck tenant abandoned the lease.  Doc. 35, pgs.1-2; Hr. Tr. 15:15-24.  Other than the commercial building on Parcel 2 that existed prior to the Debtor's acquisition of the parcels, the three parcels have not been improved.  Hr. Tr. 28:4-19.

2

Amerinvest acquired each of the three parcels on November 12, 1999, in what was described by Mr. Karimian as "one purchase" for $650,000.  Exh. 17; Hr. Tr. 27:12-14.  The purchase was financed in a seller take-back transaction, although at the time of this case's filing, the sellers were no longer creditors of the Debtor[1].  Hr. Tr. 27:15-21; *see* Claims Register.

In 2018 Amerinvest obtained a business loan from Bank of Hope in the original principal amount of $1,800,000.  Exh. 13.  The loan was made for the purpose of refinancing the parcels and was secured by a deed of trust and assignment of rents covering the three parcels.  Exhs.  14 and 16.  The Debtor also executed a promissory note in connection with the transaction.  Claim 1-1.  The loan was later assigned to the Movant, APSEC Resolution, LLC.  Claim 1-1[2]; Doc. No. 38 (Cash Collateral Order).[3]

Karimian testified that while three parcels have been billed as one property for tax purposes for the past few years, the Debtor previously received three separate assessments each year.  Hr. Tr. 29:2-19.  Amerinvest maintains that the parcels are still legally distinct properties. Hr. Tr. 29:18-20.

On December 31, 2023, the Debtor defaulted on the loan, which had matured, by failing to pay all amounts due thereunder.  Doc. No. 25, pg. 2.  A foreclosure was subsequently scheduled but was stayed by the filing of the Debtor's petition under subchapter V of chapter 11 of the Bankruptcy Code.  *Id*; Doc. No. 1.

---

[1] Seller-take back financing occurs where the seller, rather than a separate lender, provides the loan for the purchase.
[2] Claim 1-1 indicates that the loan was also secured by a security agreement and corresponding UCC Financing Statement.
[3] The Cash Collateral Order in this case acknowledges that the Debtor is indebted to the Movant in connection with the loan.

Amerinvest's schedules reflect that it has four creditors: APSEC, the City of Alexandria (for real estate taxes), Beiramee Law Group, P.C. and Huascran, Inc.  Exh. 2.  To date, only the Movant and Beiramee Law Group, P.C. have filed claims.  See Claims Register, Claims 1-1 and 2-1.

The Debtor's proposed subchapter V plan is entirely reliant on rental income from the parcels for funding.  Doc. No. 50.

### The Parties' Positions

APSEC asserts that Amerinvest qualifies as a single asset real estate entity because (i) the parcels are the Debtor's only valuable scheduled property, (ii) the Debtor is not engaged in any business activity other than renting out the parcels, (iii) the Debtor's cash from all of the parcels has been commingled in one account along with the personal funds of the Debtor's manager and sole member, (iv) the Debtor's receivables are described as uncollectible, (v) the Debtor's only debts are funds owed to the Movant, unpaid legal fees, a security deposit in relation to one of its leases, and real estate taxes owed on the parcels, and (vi) the debt owed to APSEC is secured by the parcels under the same deed of trust and assignment of rents.  APSEC also notes that the parcels were acquired simultaneously, are used for a common purpose, and are treated as one unit for tax purposes by the City of Alexandria.  Doc. No. 25, pgs. 1-4; Doc. No. 79, pg. 5.

APSEC contends that whether multiple parcels constitute a single project turns on whether the parcels are linked together by a common plan or purpose. According to the Movant, even when a debtor owns separate parcels, it still may qualify as a SARE if the parcels are acquired with the intention of holding and leasing the properties.  The Movant asserts that Amerinvest's plan for the

parcels is to hold title to the parcels, lease them, and use the rental income to pay creditors and generate a profit.

APSEC cites to the following authorities in support of its arguments: *In re Webb MTN, LLC*, No. 07-32016, 2008 WL 656271, at *6 (Bankr. E.D. Tenn. Mar. 6, 2008) (holding that five separate parcels of real property qualified as a "project" where debtor had a plan to develop land into a large land development that included a hotel, golf course, single family homes and a retail commercial center); *In re Pensignorkay, Inc.*, 204 B.R. 676, 681-82 (Bankr. E.D. Pa. 1997) (holding that two parcels of undeveloped land that "the Debtor acquired with the intention of creating subdivided parcels suitable for building and development constitutes a 'single property or project' within the meaning of the statute"); *In re Philmont Dev. Co.*, 181 B.R. 220, 223-224 (Bankr. E.D. Pa. 1995) (holding that the definition of "single asset real estate" is broad, encompassing a limited partnership that owned and operated multiple properties as a "single project" where construction of semi-detached houses was financed with one construction loan provided by a single lender to the debtor); *In re Light Foot Grp. LLC*, No. 11-17945PM, 2011 WL 5509025, at *2 (Bankr. D. Md. Nov. 10, 2011) (holding that five adjacent tracts of land containing 17 residential units, including single family homes and four-unit buildings, constituted a single project where substantially all revenue came from rent); *see also In re Pioneer Austin East Development I Ltd.*, 2010 WL 2671732 *3 (Bankr. N.D. Tx., July 1, 2010) (holding where the debtor's eight separate tracts of land were purchased separately and financed differently but ultimately all used as part of the debtor's business of selling developed lots within cohesive subdivisions, the tracts constituted a single project for purposes of section 101 (51B) and that the debtor was a single asset real estate debtor); *see also In re Kkemko, Inc.*, 181 B.R. 47, 51 (Bankr.

S.D. Ohio 1995) (recognizing that in the bankruptcy context, common usage of "single asset real estate" "meant a building or buildings which were intended to be income producing, or raw land").

Amerinvest contends that the sole issue before the Court is whether the three parcels constitute a single project.  It argues that mere common ownership and contiguous boundaries are insufficient to establish this, emphasizing that the properties must be linked by a common plan or scheme for their use.  Moreover, the Debtor argues that the common plan or scheme must govern the present use of all three parcels.  For support, the Debtor cites to *In re Evergreen Site Holdings*, 652 B.R. 307, 318 (Bankr. S.D. Ohio 2023).

The Debtor further argues that there is no single project because 406 E. Glebe Rd. is fenced off from the other two parcels and the parcels are still legally distinct lots capable of individual sale.  Amerinvest asserts that holding title to and leasing the property cannot suffice for purposes of the single project analysis because it conflates ownership with use.  The Debtor also cites to dictionary definitions of the word project to highlight the need for a plan or proposed undertaking as opposed to mere ownership.  Amerinvest maintains accepting APSEC's view would transform all real estate holding companies into SAREs.

Amerinvest also argues that because there is no plan to combine these parcels for a common use, they are not a single project. In support of this position, the Debtor cites to *In re McGreals,* 201 B.R. 736, 742–43 (Bankr. E.D. Pa.1996) (holding that two adjacent parcels did not constitute a project where debtor leased a parcel, left the other as raw land, and had no plans to combine the parcels for a unitary purpose) to argue that the three parcels do not constitute a project.

### Conclusions of Law

The Court has jurisdiction over this matter under 28 U.S.C. § 1334 and the Order of Reference entered by the U.S. District Court for this district on August 15, 1984.  This is a core proceeding as it concerns the administration of the estate.  28 U.S.C. § 157(b)(2)(A).

Section 101(51B) of the Bankruptcy Code defines "single asset real estate" to mean

> real property constituting a single property or project, other than residential real property with fewer than 4 residential units, which generates substantially all of the gross income of a debtor who is not a family farmer and on which no substantial business is being conducted by a debtor other than the business of operating the real property and activities incidental thereto.

As is relevant to the instant proceeding, debtors that qualify as single asset real estate debtors do not qualify as small business debtors, or debtors under subchapter V of the Bankruptcy Code.  Indeed, section 101(51D) of the Code sets forth the definition of a "small business debtor" and expressly excludes "a [debtor] whose primary activity is the business of owning single asset real estate…". 11 U.S.C.  § 101(51D)(A); 11 U.S.C. § 1181 (subchapter V debtor means "a small business debtor").

One court in the Fourth Circuit has held that the SARE definition distills into three requirements:

> (1) the debtor must have real property constituting a single property or project (other than residential real property with fewer than 4 residential units), (2) which generates substantially all of the gross income of the debtor, and (3) on which no substantial business is conducted other than the business of operating the real property and activities incidental thereto. If a debtor fails to meet any prong, it is not a SARE.

*In re Light Foot Grp. LLC*, No. 11-17945PM, 2011 WL 5509025, at *1 (Bankr. D. Md. Nov. 10, 2011) (citing *In re Scotia Pacific Co. LLC*, 508 F.3d 214, 220 (5th Cir. 2007)).  With respect to whether real property constitutes a single project, courts have held that "for a property or properties to constitute a single project, common ownership alone is not sufficient; the debtor must also have a common plan or purpose for the property." *In re JJMM Int'l Corp.*, 467 B.R. 275, 277–78 (Bankr.

E.D.N.Y. 2012).  When it comes to leased property, the focus for the single project analysis is on

the common plan or purpose of the debtor, not its tenants, regardless of how different each tenant's

business activity may be.  *Id*.  Courts have found single projects where the common plan for the

relevant property was to hold title to the property and lease it, even when ownership was spread

between related entities, or where parcels would not be leased to related entities.  *Id*; *see also In re

Vargas Realty Enters. Inc.*, No. 09-10402(SMB), 2009 WL 2929258, at *4-5 (Bankr. S.D.N.Y. July

23, 2009) (four residential apartment buildings with more than four units, each of which was

owned by one of four related entities all controlled by the debtor, constituted a SARE).  On the

other hand, courts have declined to find multiple parcels constituted a single project where the

debtor leased one parcel but left the other parcel as raw land and had no plans to combine the

parcels for a unitary purpose.  *In re McGreals*, 201 B.R. 736, 743 (Bankr. E.D. Pa. 1996).  In

determining whether multiple properties constitute a single project, courts have considered the

following factors including:

> (1) the use of the properties; (2) the circumstances surrounding the acquisition of
> the properties, including the time of the acquisition and the funds used to acquire
> the properties; (3) the location of the properties and proximity of the properties to
> one another; and (4) any plans for future development, sale or abandonment of the
> properties.

*In re Evergreen Site Holdings, Inc.*, 652 B.R. 307, 318 (Bankr. S.D. Ohio 2023).  "Use of the

properties, however, is the *sine qua non* of a single project determination."  *In re Hassen Imports

P'ship*, 466 B.R. 492, 508 (Bankr. C.D. Cal. 2012).

Common situations that have been found to fall within the definition of "project" include

apartment buildings (with more than four residential units), office buildings, or "strip" shopping

centers owned by an entity whose sole purpose was to operate such properties with the funds

generated from them.  *In re Philmont Dev. Co.*, 181 B.R. at 224.

8

The commonality in the caselaw is that the single project inquiry is fact specific and depends on the purpose for which the debtor uses the relevant property.  If the property is leased, the purpose for which the tenant uses the property is not controlling, the focus is on the debtor's use.  Further, the identity of the tenants does not control the inquiry.

The Code does not expressly delineate who has the burden of proof for purposes of SARE designation, but the Court notes that, in essence, this action challenges the eligibility of the Debtor to proceed as a small business debtor under subchapter V.  Courts in the Fourth Circuit have found that the debtor bears the burden of proving their eligibility under subchapter V.  *In re Blue*, 630 B.R. 179, 187 (Bankr. M.D.N.C. 2021) (citing *In re Wright*, No. 20-01035-HB, 2020 Bankr. LEXIS 1240, at *5-6, 2020 WL 2193240, at *2 (Bankr. D.S.C. Apr. 27, 2020)); *In re Stevens*, 667 B.R. 428, 434 (Bankr. S.D.W. Va. 2025); *In re: 255 North Front Street Condos, Inc.*, No. 24-03153-5-DMW, 2025 WL 1068714, at *2 (Bankr. E.D.N.C. Apr. 8, 2025).

The Court acknowledges that there is case law in other jurisdictions holding that the burden of proof for SARE designation is on the moving party. *See In re Yishlam, Inc*., 495 B.R. 328, 330 (Bankr. S.D. Tex. 2013).  There is also case law that places the burden of eligibility on the objecting party.  *See In re Body Transit, Inc*., 613 B.R. 400, 409 n. 15 (Bankr. E.D. Pa. 2020).  However, because the matters before the Court implicate eligibility, and because the Court finds that the debtor seeks to take advantage of the powerful tools and advantages of subchapter V, the Court will follow the majority approach to allocate the burden of proof on matters of eligibility to the Debtor.  *In re Evergreen Site Holdings, Inc*., 652 B.R. at 316.

**Discussion**

In determining whether Amerinvest's parcels constitute a single project, the Court must determine whether the parcels are used in a common plan or purpose of the Debtor.  The most important aspect of this analysis is the use of the parcels.  Here, the evidence is irrefutable: the parcels are all used in the Debtor's common plan to act as a commercial landlord for the parcels. Indeed, the Debtor's only business activity is renting these parcels.

The Court next turns to the economics of the parcels, including the circumstances of acquisition.  All of the parcels were purchased simultaneously, are covered by the same deed of trust and assignment of rents and, while the parcels may be legally distinct lots, they are generally treated as one economic unit by the Debtor.  This is evidenced by all income from the properties being commingled in one account with the Debtor's manager's personal funds.  Additionally, the parcels are all taxed as one unit by the City of Alexandria.

The Court now turns to the location and proximity of the parcels.  While the Debtor argues that there is a fence segregating the 406 E. Glebe lot from the other two parcels, the reality is that the parcels are adjacent to one another in the configuration of a small strip shopping center with a fenced lot connected to the shared parking lot.  *See* Exhs. 19 and 20 (photographs of shopping center).  Moreover, the evidence shows there are very few parking spaces on the 408 E. Glebe Rd. parcel; when fully occupied by a lessee for the restaurant, as the debtor plans, the tenants of Parcel 1 would be almost wholly dependent on the 3006 Richmond Highway lot (Parcel 3) to provide parking for their customers.  Hr. Tr. 17:20-18:12. In fact, the road sign advertising the businesses on Parcel 1 is located on Parcel 3. Hr. Tr. 18:6-12.

With respect to future plans for development or sale, Amerinvest points out that the parcels are legally separate and capable of being sold individually and that the Debtor has no plans to combine the parcels into one legal unit.  However, that does not negate that they are treated as one

economic unit in the Debtor's common plan to operate as a commercial landlord for these parcels. While the Debtor relies on the *McGreals* case for the proposition that common ownership is not enough where there is no intent to combine the parcels, that reliance is misplaced. *McGreals* involved two lots where one was never leased and left as raw land. Here, the evidence shows that it is the Debtor's intention to rent all of the parcels. There is no evidence to suggest that any of the parcels were intended to be left as raw unleased land, as was the case in *McGreals*.

The Debtor's reliance on *Evergreen Site Holdings* is equally unavailing. In that case, the Debtor owned two parcels that, among other things, were assigned two different uses by the county auditor, were subject to two different mortgages and were conveyed to the Debtor in two separate conveyances. Further, one parcel involved multiple leases, one of which was commercial and the other residential, which involved different duties and activities under the relevant state law. The other parcel was, at the time, vacant. *In re Evergreen Site Holdings, Inc.*, 652 B.R. at 313 and 319.[4] There was no unifying purpose or plan for all parcels in *Evergreen*. Here, the Debtor acts as a commercial landlord with respect to all the parcels, establishing a common plan or single purpose.

Amerinvest also cites to *In re Nuovo Ciao-Di, LLC*, 650 B.R. 785, 789 (Bankr. S.D.N.Y. 2023) for the proposition that the parcels cannot constitute a single project because they are not used for a single purpose. However, as the Court has already found, that is simply not true. Further, *Nuovo Ciao-Di* is factually distinguishable because the two units in that case were assigned different tax lots, were treated differently by the debtor because they were designated for different uses (one of the properties was designated as a "community facility" and the other was

---

[4] While multiple parcels with both commercial and residential leasing operations could constitute a project for SARE purposes, the properties would need to be linked by or part of a unified purpose or plan, such as a large land development project like in the *Webb MTN, LLC* case. *In re Webb MTN, LLC*, No. 07-32016, 2008 WL 656271, at *6.

subject to an easement in favor of the local transit authority)[5], and, most importantly, the debtor was actively trying to sell  one of the properties thereby negating any possibility of a common plan or purpose.  The Debtor in this case made clear that there are no plans to redevelop the parcels, and further, there is no evidence before the Court that the Debtor intends to sell any of the properties.  *See* Doc. No. 85, pg. 4.  While Amerinvest may have the *right* to sell the parcels individually, that does not mean there is an *intent* to do so.

The Debtor argues that a common plan of acting as a landlord and leasing out multiple parcels conflates ownership with use of the property.  The argument ignores that the Debtor's use of these properties goes beyond passive ownership and common borders and that it is acting as a commercial landlord for business purposes.  Not all owners of property lease their holdings out, but the Debtor has, and the evidence shows it is part of a common plan for the parcels.  Indeed, the Debtor's subchapter V Plan is premised entirely on income sourced from rent payments on the parcels.

Having weighed the evidence and arguments of counsel, the Court finds that Amerinvest has failed to meet its burden to prove that its three parcels do not constitute a single project and that it is not a SARE debtor ineligible to be a small business debtor under subchapter V of the Code.  Even if the burden were not on the Debtor, the Court finds that APSEC's evidence has shown that it is more likely than not, and in fact, convincingly clear, that the Debtor's common purpose for the parcels is to act as a commercial landlord for those parcels, and that the three properties constitute a single project.  The Debtor has not presented evidence of a non-common purpose that is greater in probative value than the evidence of common purpose submitted by the

---

[5] This does not imply that the type or identity of the tenant impacts the inquiry, rather the focus is on how the *debtor* treated the properties.  By contrast to the debtor in *Nuovo Ciao-Di*, the evidence before this Court demonstrates that the Debtor in the instant case has treated the parcels as one economic unit.

Movant.  Amerinvest has, in essence, merely claimed it is a real estate holding company.  *See* Doc. No. 85, pg. 5.

The Debtor has already conceded that the other three elements of the SARE definition were met and that the only issue before the Court for purposes of the SARE designation was whether the parcels constituted a single project.  For the reasons stated here, the Court finds that the Debtor is a single asset real estate entity and is consequently ineligible to be a small business debtor under subchapter V of the Code.

### Conclusion

**IT IS THEREFORE, ORDERED:**

1. The Debtor is hereby designated a single asset real estate debtor under section 101(51B) of the Bankruptcy Code.

2. The Debtor's small business debtor and subchapter V designations under sections 101(51D) and 1182(1) of the Bankruptcy Code are hereby REVOKED.

3. The Clerk shall provide a copy of this Order and electronic notice of its entry to the parties listed below.

Date: Apr 25 2025

/s/ Klinette H Kindred

Klinette H. Kindred
United States Bankruptcy Judge

Copy electronically to:

Entered on Docket: April 25, 2025

David C. Jones
*Counsel to the Debtor*

John T. Farnum
*Counsel to APSEC Resolution, LLC*

Office of the U.S. Trustee – Region 4